IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.: 00-6120-CIV-ZLOCH

| | |
|---|---|
| LAWRENCE FISHER and LESLEY EPSTEIN, | ) |
| Plaintiffs, | ) |
| vs. | ) |
| CAMBRIDGE Day Schools, Inc. and CAMBRIDGE Academies, Inc., | ) |
| Defendants. | ) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

Plaintiffs, Lawrence Fisher ("FISHER") and Lesley Epstein ("EPSTEIN"), submit this Memorandum of Law in Support of their Motion, pursuant to Rule 65, Fed.R.Civ.P., for the issuance of a preliminary injunction against defendants, Cambridge Day Schools, Inc. ("CDS"), and Cambridge Academies, Inc., ("CAI"), regarding their infringing uses of the mark CAMBRIDGE and the domain names CAMBRIDGEDAYSCHOOL.COM and CAMBRIDGEACADEMIES.COM in violation of Plaintiffs' rights in their Federally registered service mark CAMBRIDGE Learning Centre.

Mounting actual confusion confirms Plaintiffs will suffer irreparable injury absent the Court granting *pendente lite* relief. Every day CDS and CAI use the mark CAMBRIDGE and the domain names CAMBRIDGEDAYSCHOOL.COM and CAMBRIDGEACADEMIES.COM, within the same market area and in connection with identical services to those offered by Fisher and Epstein

1

under the CAMBRIDGE mark, increases both actual and likely confusion amongst the public. On equitable balance, the harm both to Fisher and Epstein and the general public, if a preliminary injunction were not granted, far exceeds any perceived harm the grant of a preliminary injunction would do to Defendants, who are not yet rendering educational services under the infringing mark(s).

Fisher and Epstein are likely to succeed on the merits. Not only are the marks and services of the parties virtually identical, as are their advertising media, channels of trade, and their target audience, but increasing instances of actual confusion have and continue to be documented. In the face of both constructive and actual notice of Plaintiffs CAMBRIDGE Learning Centres mark, Defendants adoption and continued use of the infringing CAMBRIDGE mark and CAMBRIDGEDAYSCHOOL.COM and CAMBRIDGEACADEMIES.COM domain names, evidence their bad faith. The public interest in preventing likelihood of confusion and further actual confusion is served by the issuance of a preliminary injunction.

At the hearing on Plaintiffs motion, Fisher and Epstein stand ready, willing, and able to post security in connection with the Courts issuance of a preliminary injunction, in the amount of any reasonable bond required by the Court.

### STATEMENT OF FACTS

**A.    Nature of This Action**

This trademark infringement, unfair competition, cyberpiracy, deceptive and unfair trade practices, and misleading advertising action seeks injunctive relief and compensatory and exemplary damages, plus costs and attorneys fees, arising from Defendants violation of Section 32(l) of the United States Trademark Act of 1946, 15 U.S.C. §1114(1); Section 43(a) of the United States

Case No.: 00-6120-CIV-ZLOCH

Trademark Act of 1946, 15 U.S.C. §1125(a); and Section 42(d)(1) of the United States Trademark Act of 1946, 15 U.S.C. §1125(d)(1); (hereafter, the "Trademark Act"). Plaintiffs' Complaint also includes supplemental claims under the common law and statutory law of Florida. (*See* Complaint, ¶¶ 36, 38, and 40).

**B.    FISHER and EPSTEIN and their
       CAMBRIDGE Learning Centre Service Mark**

Plaintiffs, Lawrence Fisher and Lesley Epstein, have a business address of 3111 University Drive, #720, Coral Springs, Florida 33065. (Complaint, ¶¶ 1 and 2).

Fisher and Epstein, themselves, and/or through licensees, have operated educational facilities for children in connection with the CAMBRIDGE mark in Florida continuously since 1989. Several such facilities have operated since that time in South Florida, including specifically Coral Springs, Sunrise, Pembroke Pines, and Weston. Such facilities have operated in connection with the service mark CAMBRIDGE; and including specifically, CAMBRIDGE Learning Centre, CAMBRIDGE Schools, and CAMBRIDGE Academy. (Complaint, ¶10). See representative uses dating from 1989 at Exhibit 1, A-L.

Plaintiffs CAMBRIDGE marks are, and have become, symbols of quality children's day care and educational services associated with businesses owned, operated, managed and/or overseen by Fisher and Epstein.(Complaint, ¶12). EPSTEIN Decl.

Plaintiffs service mark is the subject of Federal Registration No. 1,683,354. The registration is valid, subsisting, and is owned by Fisher and Epstein (by virtue of an Assignment recorded by the United States Patent and Trademark Office on December 2, 1996). On its face, the registration certificate states that the application seeking registration of the CAMBRIDGE Learning Centre mark

3

Case No.: 00-6120-CIV-ZLOCH

was filed on November 5, 1990 which, by operation of 15 U.S.C. §057(c), constitutes a nationwide constructive use date. First use of the mark is noted as May 1, 1989. Plaintiffs registration issued on April 14, 1992. The generic phrase "Learning Centre" is disclaimed. (Complaint, Exh. A).

**C.   CDS & CAI and their Use of the CAMBRIDGE Mark**

Defendants are both recently established entities. Defendant CAI is a Delaware corporation having a business address of 8300 N.W. 53rd Street, #308, Miami, Florida 33165. (Complaint ¶4). Defendant CDS is a Delaware corporation, and a corporate affiliate of Defendant CAI, having a business address of 1770 Massachusetts Avenue, Suite 212, Cambridge, Massachusetts 02140. (Complaint ¶5). Defendants seek to operate both charter and proprietary day schools in South Florida and possibly elsewhere in the United States for students in pre-kindergarten through the eighth grade. (Complaint, Exh. E).

On June 25, 1999, Defendant CDS applied to register the fictitious name "Cambridge Academies" in Florida. (Complaint, ¶14 and Exh. C). Plaintiffs have learned that Defendants plan to construct two educational facilities located in Coral Springs and Wellington, Florida. (Complaint Exh. D). The Coral Springs facility, to be known as Cambridge Day School, is scheduled to be completed and open for classes in August of 2000. (Complaint Exh. I).

**D.   CDS & CAI and Their Mis-use of the Plaintiffs'
        CAMBRIDGE Mark as Internet Domain Names**

On May 13, 1999, long after the registration date of Plaintiffs CAMBRIDGE Learning Centre trademark, and some ten years subsequent to the prominent and public use of the CAMBRIDGE mark by Plaintiffs, Defendant CAI filed to register two Internet domain names containing the CAMBRIDGE   mark   [CAMBRIDGEDAYSCHOOL.COM]   and

[CAMBRIDGEACADEMIES.COM], with Network Solutions, Inc. *a/k/a* InterNIC (hereinafter "NSI"). NSI is a company which issues domain names for the Internet. (*See* results of the NSI/WhoIs ownership search inquiry on the CAMBRIDGEDAYSCHOOL.COM and CAMBRIDGEACADEMIES.COM domain names, Complaint Exh J).

Defendants web sites may be found at the URL http://www.cambridgedayschool.com and URL http://www.cambridgeacademies.com. Defendants Internet Websites offer information and registration information for Defendants' Cambridge prospective Schools to be located in South Florida in close proximity to the existing schools of Plaintiffs. (Complaint Exh. H and I).

## STANDARDS FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION

This Circuit recognizes the appropriateness of preliminary injunctions in trademark infringement situations. Trademark actions are common venues for the issuance of preliminary injunctions. *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1219 (N.D. Ga. 1995). A District Court may grant injunctive relief if the movant shows the following:

(1)  Substantial likelihood of success on the merits;

(2)  irreparable injury will be suffered unless the injunction issues;

(3)  the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and

(4)  if issued, the injunction would not be adverse to the public interest.

*McDonalds Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *All Care Nursing Serv., Inc. v. Bethesda Mem. Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (citing *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988).

Case No.: 00-6120-CIV-ZLOCH

## SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

The probability of success on the merits at trial depends on the validity of a trademark infringement claim. *McDonalds* at 1307. Evidence of actual confusion, such as exists here, is the best evidence of "likelihood of confusion" which is central to the validity of an infringement claim. A sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of [a] substantial threat of irreparable harm. *E. Remy Martin & Co, S.A.. v. Shaw-Ross International Imports*, Inc., 756 F.2d 1525, 1530 (11th Cir. 1985).

Likelihood of confusion is determined by analysis of a number of factors, including:

(1)   the strength of the plaintiffs mark;

(2)   the similarity between the plaintiffs mark and the allegedly infringing mark;

(3)   the similarity between the products and services offered by the plaintiff and defendant;

(4)   the similarity of sales methods, i.e., retail outlets, or customers;

(5)   the similarity of advertising methods;

(6)   the defendants intent; and

(7)   the presence of actual confusion.

See *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1514 (11th Cir. 1984).

The Courts examination of these factors will show that Plaintiffs are likely to succeed on the merits of this trademark infringement, cyberpiracy and unfair competition action.

### Strength of Plaintiffs Mark

Plaintiffs' CAMBRIDGE mark has been continuously used in commerce since May 1, 1989

Case No.: 00-6120-CIV-ZLOCH

in connection with educational services. The CAMBRIDGE Learning Centre mark was Federally registered on April 14, 1992 and is entitled to a nationwide constructive use date of November 5, 1990, its filing date. 15 U.S.C. §1057(c). Although Plaintiffs' mark is Federally registered as CAMBRIDGE Learning Centre, exclusive rights to the words "learning centre" have been disclaimed. Plaintiffs have used their CAMBRIDGE mark with various other generic terms since first use in 1989. Exhibits 1 & 2 and EPSTEIN Decl. Plaintiffs registration of its CAMBRIDGE mark on the Principal Register is *prima facie* evidence that the mark is valid, distinctive, and deserving of protection from infringement.

### Similarity of the Marks

"In order to assess this factor, the Court must assess the "overall impression" created by the two marks." *Foxworthy* at 1213. Plaintiffs own the federally registered trademark CAMBRIDGE Learning Centre. Plaintiffs also have been using the marks CAMBRIDGE ACADEMY and CAMBRIDGE together with other generic terminology to identify their "family" of educational facilities. See Exhibits 1 & 2 and EPSTEIN Decl. Defendants are now using the mark CAMBRIDGE ACADEMIES, CAMBRIDGE DAY SCHOOLS and CAMBRIDGE CHARTER SCHOOLS in promoting their prospective educational activities directly competitive with these of Plaintiffs. See Exhibits 1 and 2.

The distinctive aspect of the respective marks is the word "cambridge." Although Defendants are currently using the words "day school", "academy" and "charter school" in connection with the CAMBRIDGE mark, these terms are not sufficient to prevent confusion. Plaintiffs also utilize those same generic terms which are identical in meaning to the words "learning

centre." Exhibit 1 and 2. Common sense indicates, and as confirmed by the actual confusion encountered to date, the overall impression of the respective marks is that they are identical.

**Similarity Between the Services**

"That the products involved are similar is evidence tending to prove the existence of a likelihood of confusion." *Exxon Corp. v. Texas Motor Exchange, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980). Plaintiffs have been engaged in providing educational services for children in South Florida bearing the CAMBRIDGE mark since 1989. Plaintiffs also extensively use their Federally registered CAMBRIDGE mark in the advertising and promotion of their educational facilities and on clothing, uniforms and sportswear worn by their staff and students. See Exhibit 2, A-O. Defendants are promoting and intend to operate educational and learning facilities for children that will bear the name Cambridge. The parties services are thus identical in kind.

**Similarity of the Sales Methods**

The customers targeted by both parties are identical, parents who are or will be living in South Florida seeking to enroll their children in an alternative education environment. "The similarity of the customers targeted by the sellers of goods and of the retail outlets in which they are sold is a factor which affects the likelihood of confusion by the Buyer." Reeves v. Motley Crue, Inc., 1991 U.S. Dist. Lexis 19379, (N.D. Ala. 1991). The greater the similarity between products and services, the greater the likelihood of confusion. *Exxon* at 628 F.2d 505. Since both parties are targeting identical customers, in the same region, likelihood of confusion is clearly present.

**Similarity of Advertising Methods**

Since 1989, Plaintiffs have spent in excess of $650,000 in advertising related expenses.

Plaintiffs rely on direct mail marketing and the placing of advertisements in local newspapers and telephone books to promote their educational facilities to the public, i.e, their potential customers. See Exhibit 1, A - L. Plaintiffs also have plans to establish Internet web sites to promote their activities. See EPSTEIN Decl. Defendants are promoting their facilities in an identical manner. See Complaint Exhibits E-I. "If the plaintiff and defendant both use the same advertising media, a finding of likelihood of confusion is more probable." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, (11th Cir. 1986). As both parties are promoting their identical services in an identical and overlapping manners, another factor leading to a finding of likelihood of confusion should be deemed to be present.

**Defendants' Intent**

On November 4, 1999, shortly after learning of Defendants use of the CAMBRIDGE mark, Plaintiffs trademark counsel wrote to Defendants expressing concern that Defendants were intending to use confusingly similar marks and requested that Defendants cease and desist their use of the CAMBRIDGE mark. See Complaint Exhibit K. In a letter dated November 26, 1999, Defendants trademark counsel replied that although Defendants would not use the CAMBRIDGE Learning Centre mark, they intend to continue using the CAMBRIDGE mark in conjunction with "day schools", "charter schools" and "academy." See Complaint Exhibit L. To date, Defendants continue using the CAMBRIDGE mark in conjunction with identical services. Use of an infringing mark, in the face of warnings about potential infringement, is strong evidence of willful infringement. *E. & J. Gallo Winery v. Consorzio Del Gallo Nero*, 782 F. Supp. 472 (N.D. Cal. 1992). Since Defendants continue to use the Cambridge Day School, Cambridge Charter Schools and Cambridge Academy

Case No.: 00-6120-CIV-ZLOCH

marks in a manner that is causing, or to cause confusion, Defendants can and will continue unless restrained by this Court. Defendants' ongoing use should be seen as wilful infringement in callous disregard for the established trademark rights and goodwill of Plaintiffs as well as a violation of the public's right to be free of the mounting confusion resulting from Defendants' actions.

**Actual Confusion**

Although evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion. *Jellibeans, Inc., v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833 (11th Cir. 1983) citing *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 46 (5th Cir. 1975). It takes very little evidence to establish the existence of the actual confusion factor. *Jellibeans, Inc.* at 845.

It has been well documented that "actual confusion is the best evidence of likelihood of confusion." *Amstar Corp. v. Domino's Pizza*, 615 F.2d 252, 263 (5th Cir. 1980), *cert* Denied, 449 U.S. 899 (1990). To date, Plaintiffs have encountered and documented various instances of actual confusion.

   a.   Plaintiffs received a telephone inquiry from the owner of a preschool in South Florida who had read newspaper accounts of Defendants' activities. The caller stated that, since Fisher and Epstein apparently were expanding their business to Wellington and elsewhere, Plaintiffs might consider buying the caller's school rather than opening up Plaintiffs' own school. Fisher and Epstein have not announced any current plans to open a CAMBRIDGE school in Wellington.

   b.   Plaintiffs received a telephone inquiry from a caller located in Ocala, Florida. The

10

      caller had read an article regarding Cambridge Academy, and believed to know one of the persons mentioned in the article. The caller was attempting to locate Cambridge Academy, in order to contact the individual identified in the article, and was directed to Plaintiffs. As mentioned above, reference to the Cambridge Academy in the Ocala article is to Defendants, not Plaintiffs.

c.   In June, 1999, Plaintiffs sold the physical facilities of CAMBRIDGE Learning Centre at Coral Springs to Wyndham Learning Center, Inc. ("Wyndham"). The contract contained a geographical non-compete clause. Approximately 30 days after the sale, Plaintiffs' counsel received a call from Wyndham's attorney, indicating that if Plaintiffs did not cease and desist from opening up a Cambridge Academy in Coral Springs, a lawsuit would be filed for breach of contract. Wyndham, apparently, had heard that Cambridge Academy was moving into Coral Springs. Knowing of Plaintiffs' operations, Wyndham assumed that this was another of Plaintiffs' schools opening for business. The Cambridge Academy of which Wyndham had heard was that of Defendants, not of Plaintiffs.

d.   Plaintiffs' supplier of playground equipment, recently forwarded to their attention an article from the Broward Section of the Miami Herald, which indicated that a new Cambridge Academy was opening in Coral Springs. This supplier assumed Plaintiffs were opening a new school in Coral Springs and hoped to do more business with them. The Cambridge Academy referred to in the Miami Herald article is that of Defendants, not of Plaintiffs.

11

e.  Fisher and Epstein have developed a business relationship with U.S. Construction Company that previously had built Plaintiffs' Weston, Florida facility. The owners of the construction company provided Fisher and Epstein with a copy of a report from a construction magazine, indicating that one of the Defendants was planning to open schools in Coral Springs and Wellington, Florida. The owners of U.S. Construction Company were disappointed that Plaintiffs had apparently planned the building of two schools without contacting them. The new construction projects planned for Coral Springs and Wellington, Florida are those of Defendants, not of Plaintiffs.

f.  Recently, a parent contacted Fisher and Epstein, and informed Plaintiffs that a former employee of the Pembroke Pines Charter School quit his prior employment and was hired by Cambridge Academy. The parent was pleased to hear that this person would be working for Plaintiffs. The Cambridge Academy to which the parent was referring is the facility associated with Defendants, not Plaintiffs.

g.  While at Plaintiffs' Weston learning facility, another parent approached Plaintiff Epstein and indicated with pleasure that she was moving into the Cypress Head community located in Parkland, Florida, and that there would be a new Cambridge School established in North Coral Springs. The Cambridge facility to which the parent was referring is the facility associated with Defendants, not Plaintiffs.

h.  Also recently, the Dell Computer Company delivered to Plaintiffs' offices packages containing computer equipment, believed to be printers. The packages were

Case No.: 00-6120-CIV-ZLOCH

addressed to the attention of Mr. Michael Olkes, who is employed by Defendants.

These are presumptive of those mounting instances which arise during Plaintiffs' school registration season some six months in advance of the planned opening of educational facilities bearing the CAMBRIDGE name. Unless enjoined, Defendants' conduct will only further increase the amount of confusion that the potential consumer will encounter.

### IRREPARABLE INJURY WILL BE SUFFERED BY PLAINTIFFS IF A PRELIMINARY INJUNCTION IS NOT GRANTED

"Irreparable injury could be presumed as a matter of law where a substantial likelihood of success on the merits, due to a showing of likelihood of confusion (and hence trademark infringement) was established." *E. Remy Martin & Co.* at 1530. Plaintiffs have demonstrated actual confusion, that the marks and services of the parties are in legal contemplation identical, and that the targeted customers and methods of advertising of the parties are identical and/or overlapping. As Defendants continue to use the CAMBRIDGE mark in a confusingly similar manner, their intent is clear and self-serving, and their willful infringing activities have already resulted in increasing actual confusion.

"When a plaintiff makes a prima facie showing of trademark infringement, irreparable harm is ordinarily presumed." *McDonald's* at 1309. Moreover, where there is a likelihood of confusion [never more clear than when, as here, actual confusion exists], remedies under the Lanham Act, including injunctive relief, are appropriate. *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir. 1984).

Case No.: 00-6120-CIV-ZLOCH

## THE INJURY TO PLAINTIFFS OUTWEIGHS WHATEVER DAMAGE DEFENDANTS MAY BE CAUSED

Plaintiffs have been using the CAMBRIDGE mark since 1989. To date, Plaintiffs have invested in excess of $650,000 in advertising their educational facilities. Although Defendants are in the process of constructing two educational facilities, the issuance of a preliminary injunction will not effect the building of these structures, but only the names used to identify the educational facilities to be housed within these structures. Defendants' schools are scheduled to open in August of 2000. Therefore, after immediately ceasing use of CAMBRIDGE marks, there is ample time for Defendants to choose a name that is not confusingly similar to Plaintiffs' prior to the beginning of the next school year.

## GRANTING OF THE PRELIMINARY INJUNCTION WILL NOT DISSERVE THE PUBLIC'S INTEREST

The public is entitled to be free from deception and confusion. "In a trademark infringement or unfair competition case, a third party, the consuming public, is present and its interests are paramount." *Bellsouth Advertising & Publ. Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991) Injunctive relief will serve the public interest by immediately stopping Defendants' deception of consumers. Id.; See also *Teledyne Industries, Inc. v. Windmere Products., Inc.*, 433 F. Supp. 710, 740 (S.D. Fla. 1977) ("customer confusion is by its very nature against the public interest").

## CONCLUSION

Plaintiffs will suffer irreparable injury absent the Court granting preliminary injunctive relief. The harm to Plaintiffs if a preliminary injunction were not granted far exceeds any perceived

Case No.: 00-6120-CIV-ZLOCH

harm the grant of a preliminary injunction would do to Defendants, given the ease of Defendants changing to an alternative mark. Plaintiffs have shown that they will likely succeed on the merits of its trademark infringement and unfair competition claims. Issuance of a preliminary injunction will serve the public interest by preventing consumer confusion and protecting Plaintiffs legitimate trademark rights.

For the foregoing reasons, Plaintiffs request that the Court issue a preliminary injunction against Defendants infringing use of the CAMBRIDGE service mark and the infringing CAMBRIDGEDAYSCHOOL.COM and CAMBRIDGEACADEMIES.COM domain names. A Proposed Order is attached.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of this Notice has been furnished by mail to: CHARLES L. SOLOMONT, ESQ., Authorized Agent for Cambridge Academies, Inc. and Cambridge Day School, Inc., 150 Federal Street, Boston, Massachusetts 02110 on this ___ day of February, 2000.

Respectfully submitted,
FRANK, EFFMAN, WEINBERG & BLACK, P.A.

By: _____
Robert T. Slatoff (Fla. Bar # 816116)
7805 S.W. 6th Court
Plantation, Florida 33324
Tel. (954) 474-8000

Case No.: 00-6120-CIV-ZLOCH

Fax. (954) 474-9850
E-mail: Rslatoff@fewb.com
ATTORNEYS FOR PLAINTIFFS
LAWRENCE FISHER and LESLEY EPSTEIN

<u>Of Counsel</u>:

| | |
|---|---|
| Brian D. Anderson (Fla. Bar # 0285811) | Steven A. Weinberg (Fla. Bar # 367508) |
| Jonathan Hudis | FRANK, EFFMAN, WEINBERG, |
| Michael J. Leonard | & BLACK, P.A. |
| OBLON, SPIVAK, McCLELLAND, | 7805 S.W. 6th Court |
| MAIER & NEUSTADT, P.C. | Plantation, Florida 33324 |
| 1755 Jefferson Davis Highway | Tel. (954) 474-8000 |
| Arlington, Virginia 22202 | Fax. (954) 474-9850 |
| Tel. (703) 413-3000 | Sweinberg@fewb.com |
| Fax. (703) 413-2220 | |
| E-mail: Banderson@oblon.com | |
| Jhudis@oblon.com | |

16

# ADDITIONAL ATTACHMENTS NOT SCANNED

PLEASE REFER TO COURT FILE