UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| LAWRENCE FISHER and LESLEY EPSTEIN,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>CAMBRIDGE DAY SCHOOLS, INC. and<br>CAMBRIDGE ACADEMIES, INC.,<br><br>　　　　　　　　Defendants. | CIVIL ACTION NO.<br>00-6120-CIV-ZLOCH |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR
EXPEDITED DISCOVERY OR TO COMBINE PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION WITH TRIAL ON THE MERITS**

Defendants Cambridge Day Schools, Inc. and Cambridge Academies, Inc. (collectively "CDS") hereby request that the Court enter an order allowing limited, expedited discovery in order to allow CDS to prepare a meaningful response to the motion for preliminary injunction filed by plaintiffs Lawrence Fisher and Lesley Epstein (collectively "Plaintiffs").

After waiting two months from the day it received defendants' response to a cease and desist letter, and then waiting another month after filing their complaint, Plaintiffs now purport to immediately require a remedy that it would literally cripple the defendants' business, even before a single iota of discovery has been taken. This is apparently so even though defendants have recently and unilaterally agreed to entirely cease use of the one mark previously utilized by defendants with regard to which plaintiffs have plead with any degree of specificity.

Having waited three months, however, CDS asks that the Court require Plaintiffs to wait a little longer—just long enough to allow CDS to conduct the minimal

LITDOCS:338759.1

discovery necessary to adequately prepare a response to an injunction which, if granted, would be tantamount to a providing Plaintiffs nearly the entire remedy they seek. For that reason, as well as those outlined below, CDS moves this Court to order expedited, focused discovery prior to a hearing on preliminary injunction or, in the alternative, to combine a hearing on plaintiff's motion for preliminary injunction with a trial on the merits. Only by so allowing CDS to prepare some meaningful response to Plaintiffs' allegations may the significant interests of the parties be fairly, fully, and expeditiously resolved.

## Background and Procedural History

On November 4, 1999, CDS received a letter from counsel for Plaintiffs regarding "Potential Infringement . . . Mark: CAMBRIDGE ACADEMY." ("Plaintiffs' Letter") *See* Exhibit K to Plaintiffs' Complaint. In it, Plaintiffs note that they are the registered owners of the mark CAMBRIDGE LEARNING CENTRE, and assert that certain "[r]elated company licensees" have operated day schools under that mark as well as the mark CAMBRIDGE ACADEMY. Based on this stated use alone, Plaintiffs requested that CDS cease initiation of services "in connection with the mark CAMBRIDGE ACADEMY, CAMBRIDGE or any other mark confusingly similar thereto." No where in the letter, however, do Plaintiffs justify this sweeping prohibition by offering any evidence that they had used any marks besides CAMBRIDGE LEARNING CENTRE and CAMBRIDGE ACADEMY.

After careful investigation, CDS, through counsel, responded to Plaintiffs' Letter on November 26, 1999 (the "CDS Letter"). *See* Exhibit L to Plaintiffs' Complaint. In the CDS Letter, defendants assured Plaintiffs that it would not use the registered CAMBRIDGE LEARNING CENTRE mark, but went on to express CDS's belief that the mark CAMBRIDGE itself was a very weak mark. As such, CDS stated that it believed Plaintiffs were entitled only to limited protection of the CAMBRIDGE LEARNING CENTRE mark, and not to the daunting right of precluding use by anyone else of the

CAMBRIDGE mark. Nevertheless, CDS invited Plaintiffs to provide any additional evidence it felt might contravene CDS's stated opinion.

For two months after the CDS Letter was sent, Plaintiffs neither made further demands that CDS cease use of marks featuring the word CAMBRIDGE, nor took CDS up on its offer to provide some additional evidence to strengthen its broad claims.

Assuming that Plaintiffs had wisely reconsidered the breadth of their rights in light of the CDS Letter, the defendants proceeded in earnest to establish their name and, ultimately, toward establishing a student body for its first Cambridge Day School, due to open in Fall of 2000. This involved significant expenditures for advertising, open houses, and the like, all *after* the CDC Letter was sent.

On or about January 27, 2000, counsel for Plaintiffs contacted counsel for CDS, requesting that counsel accept service of process for their complaint as filed on January 25, 2000. Plaintiffs agreed, ultimately receiving Plaintiffs' Complaint on February 4, 2000. In the Complaint, as in Plaintiffs' Letter, Plaintiffs state their rights to the CAMBRIDGE LEARNING CENTRE and CAMBRIDGE ACADEMY marks. *See* Complaint, ¶ 1. Plaintiffs then went on to make vague references to their "CAMBRIDGE marks." *Id.*

In response to receiving the Complaint, and having finally been provided with evidence of at least some (albeit minor) level of specificity as to use of the CAMBRIDGE LEARNING CENTRE and CAMBRIDGE ACADEMY marks, CDS took immediate steps. CDS began use of disclaimers on its advertising and websites, and instituted a series of telephone calls to Plaintiffs with an aim to resolving the matter. During those telephone conversations, CDS repeatedly offered to cease use of the name "Cambridge Academies," the one mark similar to either CAMBRIDGE LEARNING CENTRE or CAMBRIDGE ACADEMY. Plaintiffs continued to press for a cessation of use by CDS of *any* mark featuring the word CAMBRIDGE.

On February 28, 2000, CDS received Plaintiffs' motion for preliminary injunction with attendant memorandum and declaration. Again, as with the complaint, the supporting memorandum and exhibits evidence use of the CAMBRIDGE LEARNING CENTRE and CAMBRIDGE ACADEMY marks, with some vague indication of use of the word CAMBRIDGE on its own or with other suffixes. Plaintiffs make no effort to clarify when, where, or how these "other" CAMBRIDGE marks were utilized.

As a show of good faith, that same day, CDS sent a letter by facsimile, a true and accurate copy of which is attached hereto as *Exhibit A*, voluntarily and unilaterally stating its intention to cease use of the CAMBRIDGE ACADEMIES mark. In return, CDS asked that Plaintiffs either withdraw their motion for preliminary injunction (as the only real mark at issue had been resolved) or, at a bare minimum, allow CDS to take limited and expedited discovery on a few vital factual topics before being required to respond blindly to Plaintiffs' motion.

On February 29, 2000, Plaintiffs responded that they would not withdraw their motion. However, Plaintiffs invited CDS to proffer a written schedule for expedited discovery, which CDS provided in the form of another letter that same day, a true and accurate copy of which is attached as *Exhibit B*. In their response dated March 1, 2000, a true and accurate copy of which is attached as *Exhibit C*, Plaintiffs rejected CDS's entire request, instead offering a single deposition and a mere four days thereafter to file an opposition. This single deposition, however, would hardly provide any documentary evidence of use of the "other" marks, to say nothing of the fact that it would offer absolutely no insight into the supposed confusion witnesses. This morning, CDS requested that Plaintiffs reconsider. Plaintiffs refused to do so, stating that the single deposition was all they were willing to offer, forcing CDS to file this motion and memorandum.

At present, CDS is at a crucial time in its development of the Cambridge Day School in Coral Springs. After two months of aggressive marketing, CDS has received several applications, and has just started accepting its first few applicants for the 2000-2001 school year. Any sudden change in the school's name now, just as parents are forming their opinions and making decisions for this Fall, would devastate CDS and its efforts to get its first school underway.

**Expedited Discovery is Necessary and Appropriate**

Plaintiffs requested injunction, if allowed, would severely undermine CDS's efforts to develop its student body at this crucial time. Further, since an injunction would force a name change, and CDS could never withstand the further negative implications of a change *back* to Cambridge Day School after changing to another name, the granting of Plaintiffs' pending motion would be tantamount to a permanent injunction against CDS—the same remedy Plaintiffs would receive after a full trial on the merits.

In spite of the dire consequences of the pending motion, Plaintiffs have refused to agree to provide CDS anything more than a single deposition—even refusing to offer a list of the names of their supposed confusion witnesses. The factual record, however, is woefully incomplete for such a significant motion. Plaintiffs' complaint and motion papers raise more questions than answers on several vital issues, and expedited discovery is necessary to allow CDS – to say nothing of the Court – to answer these and other questions:

*1.*    ***What are the marks?*** Even though the bulk of what limited evidence Plaintiffs have provided to date suggests use predominantly of the CAMBRIDGE LEARNING CENTRE and CAMBRIDGE ACADEMY marks, Plaintiffs persist in requesting a cessation of use of *all* CAMBRIDGE-related marks by CDS. While the papers to date vaguely suggest some use by the Plaintiffs of the word CAMBRIDGE with other suffixes, they are insufficient to indicate:

(a) When Plaintiffs began using these "other" marks;

(b) In what manner have they used them;

(c) Have those uses been in interstate commerce;

(d) With what products or services have they been used in association; and

(e) Toward which prospective purchasers have they been directed.

2. ***How much weight, if any, can be given to Plaintiffs' allegations of "actual confusion?"*** Plaintiffs put a great deal of emphasis on supposed instances of actual confusion. Yet, Plaintiffs offer no real evidence of confusion—even refusing to provide a simple list of the names of the allegedly confused individuals. Instead, in Plaintiffs' complaint, its memorandum in support of preliminary injunction, and the declaration of Lesley Epstein, the same eight paragraphs vaguely alleging confusion are simply repeated verbatim. These eight paragraphs contain not mere hearsay vis-à-vis the alleged confusion, they contain *double* hearsay in that they are not attributed to any single speaker. Even in the supporting declaration, Ms. Epstein does not testify that *she personally* received certain telephone calls, etc. Rather, it is "Plaintiffs" generally that have received these communications. Before an essentially dispositive injunction is entertained by this Court, this evidence must at least be vetted to some meaningful degree.

3. ***How much confusion, if any, will exist on a ongoing basis given that CDS is ceasing use of the CAMBRIDGE ACADEMIES mark?*** From what little detail is ascertainable from Plaintiffs' eight paragraphs, the alleged confusion appears to arise exclusively from the use of the name "Cambridge Academies, Inc." as a name for Cambridge Day Schools, Inc.'s corporate affiliate. Given that CDS is ceasing use of that name, CDS believes the confusion, if any, will also cease. CDS should receive a list of each alleged confusion witnesses, and then be allowed to conduct depositions of each witness to answer these centrally important questions.

***4.   What precisely is Plaintiffs' market space?*** While Plaintiffs say in passing that they provide "directly competitive" services, it is unclear how much, and for how long, Plaintiffs have provided educational services above the Kindergarten lease. Given that CDS's focus runs from children aged three to fourteen, and it appears that Plaintiffs focus has been on children aged eighteen months through five years, the cross-over in market may be very slight - a fact highly relevant to the necessary likelihood of confusion analysis.

### The Balance of Hardships Favors Expedited Discovery

CDS need not prove at this early juncture that it will prevail against Plaintiffs on each—or any—of the elements in the preliminary injunction standard of review. Indeed, CDS's main concern is that it *cannot* adequately respond to each element absent additional discovery. However, to the extent that the Court must weigh the hardships caused by ordering or not ordering limited discovery, Plaintiffs will not be meaningfully prejudiced by a short delay to allow expedited discovery (or even a sufficient delay to allow the combination of the hearing on the injunction with a trial on the merits). The lack of a stay to allow discovery, on the other hand, would be extremely detrimental—and indeed permanently prejudicial—to CDS.

***1.   Plaintiffs Will Not Be Materially Damaged or Prejudiced By A Short Delay To Allow Expedited Discovery.***

A reasonable stay on the motion for preliminary injunction will not prejudice the Plaintiffs in any meaningful way. CDS has already taken extensive measures to minimize any possible harm to Plaintiffs, including *the* volunteering to cease use of the CAMBRIDGE ACADEMIES mark and the use of disclaimers on existing and future marketing materials (including the Cambridge Day School website). These steps, CDS believes, outright eliminate an possible future confusion—and thus future harm. However, if this Court ultimately determines that Plaintiffs have been harmed, the

relevant state and federal laws provide ample remedy in the form of damages and/or a permanent injunction.

Plaintiffs own conduct demonstrates that delay on the order of a matter of weeks will not be detrimental. Plaintiff waited two months from the time CDS sent its response to the Plaintiffs' Letter to file this action, and an additional month to file its motion for preliminary injunction. After such a delay, Plaintiffs would be hard-pressed to seriously argue that they will be harmed in any way by a few additional weeks to allow some minimal vetting of the facts.

### 2. *Defendants Will Be Irreparably Damaged and Prejudiced Without Expedited Discovery.*

Plaintiffs give short shrift to the possibility that CDS could be harmed by having to change the name of the Cambridge Day School at the height of the recruitment season. This cursory and wrongheaded dismissal aside, an injunction at this time in the development of the Cambridge Day School at Coral Springs would be extremely damaging to CDS. After receiving no response to the CDS Letter in November, CDS proceeded to conduct an extensive (and expensive) marketing campaign to generate interest in the Coral Springs school. CDS issued several mass mailings, purchased advertising space in local newspapers, and conducted numerous open houses. All these efforts, in turn, were aimed at soliciting applicants, and ultimately students, for enrollment in the Cambridge Day School's Fall 2000 classes. It is common sense that parents will make a decision regarding the situs of their child's education with great care, after significant investigation, and well in advance of the start of classes. Now, and for the next few months, CDS will be in a critical period for the purposes of generating a student body for its inaugural school year. An injunction at this point, particularly one based on the present lattice-work of hearsay and innuendo in Plaintiffs' papers, would jeopardize the Cambridge Day School's entire first year of existence. Thus, the balance of hardships, to the extent the Court deems it necessary

for the purposes of deciding this motion, weighs in favor of allowing CDS a period of discovery prior to entry of the order requested by Plaintiffs

## Conclusion

Given the uniquely irreparable harm CDS would suffer from an injunction at this stage, and the lack of harm Plaintiffs would suffer from a short delay, CDS requests that this Court enter an order calling for limited, expedited discovery prior to a hearing on the merits. In the alternative, CDS requests that this Court simply consolidate a hearing on the preliminary injunction with a trial on the merits.

Respectfully submitted,

CAMBRIDGE DAY SCHOOLS, INC. and
CAMBRIDGE ACADEMIES, INC.,

By their attorneys,

_____
Joseph W. Bain, Florida Bar No. 860,360
QUARLES & BRADY LLP
222 Lakeview Avenue, 4th Floor
West Palm Beach, Florida 33401
(561) 653-5000

*Of Counsel:*
Charles L. Solomont
Joshua M. Dalton
BINGHAM DANA LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000
Dated: March 2nd, 2000

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon Robert T. Slatoff, Esq., Frank, Effman, Weinberg, & Black, P.A., 7805 S.W. 6th Court, Plantation, Florida 33324 and Brian D. Anderson, Esq., Oblon, Spivak, McClelland, Maier & Neustadt, P.C., 1755 Jefferson Davis Highway, Arlington, Virginia 22202, attorneys of record for plaintiffs, by U.S. Mail and Federal Express on March ___, 2000

_____
Joseph W. Bain

# ADDITIONAL ATTACHMENTS NOT SCANNED

PLEASE REFER TO COURT FILE

Scanned Image - 0:96CV6496 Document 53 page 3 Thu Oct 14 08:40:58 1999