IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| LAWRENCE FISHER and LESLEY EPSTEIN, | ) |
| | ) Case No.: 00-6120-CIV-ZLOCH |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| CAMBRIDGE Day Schools, Inc. and | ) |
| CAMBRIDGE Academies, Inc., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR EXPEDITED DISCOVERY OR TO COMBINE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION WITH TRIAL ON MERITS**

Plaintiffs, Lawrence Fisher and Lesley Epstein, ask that the Court deny Defendant's motion for expedited discovery or to combine Plaintiffs' preliminary injunction motion with a trial on the merits.

Defendants request expedited discovery to allow them sufficient time to acquire information "to prepare a meaningful response" to Plaintiffs' preliminary injunction motion. Without citing a single case supporting why the grant of expedited discovery would be appropriate, Defendants have succeeded only in showing: (i) that time is of the essence[1], (ii) that Plaintiffs require immediate *pendente lite* relief, and (iii) that Defendants sat idly by without conducting their own investigation, which would have obviated the need for the needless discovery Defendants now seek at this late date.

---

[1] Time is of the essence for Plaintiffs because Defendants are using confusingly similar marks in the same market place as Plaintiffs, competing for the same business, and Defendants are rapidly increasing their marketing activities to Plaintiffs' detriment.

Case No.: 00-6120-CIV-ZLOCH

**Defendants Do Not Need Discovery to Ascertain Plaintiffs' Marks and Uses Thereof**

Defendants do not dispute Plaintiffs' ownership of U.S. Trademark Registration No. 1,683,354 for the mark CAMBRIDGE LEARNING CENTRE. Plaintiffs are entitled to the statutory benefits that attach to their registration, because:

> A certificate of registration of a mark upon the Principal Register provided by the [Trademark] Act shall be *prima facie* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of **the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods and services specified in the certificate**, subject to any conditions or limitations stated in the certificate." 15 U.S.C. §1057(b). (Emphasis Added).

Thus, even without all the additional evidence attached to Plaintiffs' Complaint and the Declaration of Ms. Lesley Epstein, Plaintiffs come to the Court as the presumptive owners of superior trademark rights.

The only limitations on Plaintiffs' registration is that "no claim is made to the exclusive right to use 'learning centre' apart from the mark as shown." The disclaimer reflects the obvious, that the descriptive term "learning centre" is of lesser significance to the commercial impression of the mark than is CAMBRIDGE, the dominant feature or term of Plaintiffs' registered mark.

It has long been held that "one feature of a mark may be considered to dominate other features in creating the mark's commercial impression." *Guaber, S.P.A. v. Nutri-Metics Intl., Inc.*, 1991 U.S. App. LEXIS 10842, (Fed. Cir. 1991), *citing, Burger Chef Sys., Inc. v. Sandwich Chef, Inc.*, 608 F.2d 875, 877, (CCPA 1979) and *Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915, 917 (CCPA 1976).

Case No.: 00-6120-CIV-ZLOCH

The dominant feature of Plaintiffs' registered CAMBRIDGE LEARNING CENTRE mark, as well as their common law marks CAMBRIDGE ACADEMY, CAMBRIDGE SCHOOLS is the word "cambridge" (*See*, Exhibits to Epstein Declaration and Plaintiffs' Complaint). As a result of Defendants' uses of the Cambridge Day Schools and Cambridge Academies marks in conjunction with identical services, a confusingly similar commercial impression between the parties' respective marks is apparent.

Defendants request expedited discovery to allow them to ascertain the extent of Plaintiffs' use of the CAMBRIDGE marks. Contrary to Defendants' assertions, ample evidence of Plaintiffs' use of their marks already has been provided. Attached to Plaintiffs' Memorandum in Support of their Motion for Preliminary Injunction are: Exhibit 1, tabs A through L – representative advertisements, dating from 1989, for Plaintiffs' educational facilities bearing the CAMBRIDGE mark: and Exhibit 2, tabs A through O – representative uses of Plaintiffs' marks in conjunction with clothing and other apparel. Additional evidence of Plaintiffs' uses of their CAMBRIDGE marks is attached to Plaintiffs' Complaint.

Plaintiffs, then, already have provided numerous representative examples of the duration and extent of use of their CAMBRIDGE marks. This evidence alone amply supports Plaintiffs' claims that their CAMBRIDGE marks have been extensively used in conjunction with educational services in the South Florida area for over ten years. Plaintiffs offered to produce Ms. Epstein for a deposition, so that Defendants could test the claims she made in her Declaration. Defendants soundly rejected this offer, and instead chose to burden the Court with a motion for expedited discovery.

Case No.: 00-6120-CIV-ZLOCH

### Defendants Challenge to Plaintiffs' Evidence of Actual Confusion

As Plaintiffs have discussed in their Memorandum in Support of Motion for Preliminary Injunction, proof of actual confusion is not necessary to this Court's finding of likelihood of confusion, *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833 (11th Cir. 1983), *citing*, *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 46 (5th Cir. 1975). Plaintiffs already have presented a strong case of likelihood of confusion, which may by itself be sufficient to show threatened irreparable harm, warranting the issuance of a temporary injunction. *E. Remy Martin & Co. S.A. v. Shaw-Ross International Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985), warranting the issuance of a preliminary injunction.

Nonetheless, Defendants criticize the instances of actual confusion recited in Ms. Lesley Epstein's Declaration as being the collective assertions of Plaintiffs, as opposed to Ms. Epstein herself. However, in ¶11 of Ms. Epstein's Declaration, she states: "[T]he instances of actual confusion set forth in paragraph 13 below and in the Complaint and Plaintiffs' Memorandum in Support of the Preliminary Injunction are known to me and have been accurately depicted . . ." Therefore, the instances of actual confusion stated in Ms. Epstein's Declaration should be treated as her own present sensory impressions formed upon hearing the comments, questions, and inquiries of parents, contractors or business associates.

Defendants also criticize Plaintiffs' evidence of actual confusion alleged in the Complaint and in Ms. Epstein's Declaration as allegedly consisting of hearsay. Plaintiffs disagree with this assertion.

At this stage of the proceedings, however, it is not necessary for the Court to decide whether the instances of actual confusion recounted in the Complaint and Ms. Epstein's Declaration consist of hearsay evidence. "At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is "appropriate given the character of the injunctive proceedings." *Levi Strauss & Co. v. Sunrise Intl. Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) citing *Asseo v. Pam American Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986). Given the significant harm that has occurred and continues to occur as a result of Defendants' uses of their infringing CAMBRIDGE marks, the detailed evidence of actual confusion contained in Ms. Epstein's Declaration indeed is appropriate for consideration by the Court at this time.

Although Plaintiffs deny that the partial recounting of actual confusion encountered to date is excludable hearsay it nonetheless should be considered by the Court as an exception to the rule against hearsay provided in Rule 803(1), Fed.R.Evid., which permits the Court's consideration of "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."

Defendants go to great lengths in their motion papers to persuade the Court that additional time should be granted for the taking of the depositions of the third parties who were confused about the parties' confusingly similar CAMBRIDGE names, advertised for competitively identical services. What have Defendants been doing to investigate the facts since (i) early November 1999, when Plaintiffs' cease-and-desist letter was sent, (ii) January 2000, when the Complaint was served,

Case No.: 00-6120-CIV-ZLOCH

and (iii) early February 2000, when Plaintiffs' preliminary injunction motion was served? Defendants' papers do not provide any details of their alleged "careful investigation."

### Defendants' Offer to Cease Using the Cambridge Academies Mark

Plaintiffs certainly are pleased that Defendants are willing to cease use of the infringing CAMBRIDGE Academies mark. However, this action is tantamount to an admission of infringement and is patently insufficient to eliminate the ongoing likelihood of confusion arising from their planned continuation of CAMBRIDGE Day Schools and CAMBRIDGE Charter Schools in conjunction with identical services in the same geographical region in which Plaintiffs' CAMBRIDGE schools are located. Plaintiffs and the relevant general public will continue to suffer further actual confusion during this period when students are actively being enrolled for the 2000-2001 school year. Potential injury arising from a loss of control over the reputation associated with the embodiment of the goodwill of a business, the trademark, is the gravamen of trademark infringement which by its very nature gives rise to irreparable damage. *Nailtiques Cosmetic Corp. v. Salon Sciences, Corp.*, 1997 U.S. Dist. LEXIS 4662 (S.D. Fla. 1997), *citing, Council of Better Business Bureaus, Inc. v. Better Business Bureau of So. Fla., Inc.*, 200 USPQ 282, 289 (S.D. Fla. 1978).

### Defendants' Assertion that they are Unsure of Plaintiffs' Market Space

Defendants profess ignorance of what Plaintiffs "market space" is. Defendants have had ample time since receiving Plaintiffs' cease-and-desist letter in November, 1999 to confirm that the services of the Plaintiffs and the prospective services of the Defendants are identical. As shown in Exhibit 1, tabs A through L to Plaintiffs' Memorandum in support of their preliminary injunction

Case No.: 00-6120-CIV-ZLOCH

motion, Plaintiffs' currently operate, and have operated, educational facilities for children aged 1 through the eighth grade in the South Florida region. Plaintiffs' activities or "market space" is clearly ascertainable from both the marketplace and from the evidence thus far presented. The planned activities of the Defendants can also be seen as identical to those of Plaintiffs from the promotional web site of Defendants, **www.cambridgeacademies.com** .

### The Balance of Hardships Do Not Favor Expedited Discovery

With no supporting affidavit, Defendants claim that they will encounter "uniquely irreparable harm" if a preliminary injunction is issued. Defendants ignore, however, that Plaintiffs are the senior owners and users of the CAMBRIDGE marks, and are currently suffering irreparable harm as a result of Defendants' infringing promotional and advertising efforts. The alleged harm to Defendants if a preliminary injunction is entered against them will be the consequence of their own willful and knowing infringement of a Federally registered trademark that has been in use for over ten years. Within their Motion for expedited discovery, Defendants admit that they deliberately chose to invest resources in promoting their confusingly similar CAMBRIDGE marks **after** receiving Plaintiff's cease-and-desist letter. They should not be rewarded for this callous behavior, which was calculated to give them instant credibility in a marketplace where the CAMBRIDGE name has been known and well regarded in connection with children's education for 10 years.

To grant Defendants additional time to take burdensome discovery will only result in further and increasing actual confusion, the loss of additional customers (parents of attending school children), tuition revenue and goodwill by Plaintiffs. This in itself constitutes an irreparable harm, but to Plaintiffs not Defendants.

Case No.: 00-6120-CIV-ZLOCH

## Conclusion

In light of the above, Plaintiffs request that the Court deny Defendants' Motion for Expedited Discovery or to Combine Plaintiffs' Motion For Preliminary Injunction with Trial on Merits.

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by Federal Express and United States Mail to: CHARLES L. SOLOMONT, ESQ., 150 Federal Street, Boston, Massachusetts 02110 and JOSEPH W. BAIN, ESQ., Quarles & Brady LLP, 222 Lakeview Avenue, 4th Floor, West Palm Beach, Florida 33401, Attorneys for Defendants, on this ___ day of March, 2000.

Respectfully submitted,

FRANK, EFFMAN, WEINBERG, & BLACK, P.A.

By: _____
Robert T. Slatoff (Fla. Bar # 816116)
7805 S.W. 6th Court
Plantation, Florida 33324
Tel. (954) 474-8000
Fax. (954) 474-9850
E-mail: Rslatoff@fewb.com
ATTORNEYS FOR PLAINTIFFS
LAWRENCE FISHER and LESLEY EPSTEIN

Of Counsel:
Brian D. Anderson (Fla. Bar # 0285811)
Jonathan Hudis
Michael J. Leonard
OBLON, SPIVAK, McCLELLAND,
 MAIER & NEUSTADT, P.C.
1755 Jefferson Davis Highway

Steven A. Weinberg (Fla. Bar # 367508)
FRANK, EFFMAN, WEINBERG,
 & BLACK, P.A.
7805 S.W. 6th Court
Plantation, Florida 33324
Tel. (954) 474-8000

8

Case No.: 00-6120-CIV-ZLOCH

Arlington, Virginia 22202  
Tel. (703) 413-3000  
Fax. (703) 413-2220  
E-mail: Banderson@oblon.com  
Jhudis@oblon.com  
Mleonard@oblon.com  

Fax. (954) 474-9850  
E-mail: Sweinberg@fewb.com  

{H:\FEWB\C\Cambridge Learning Ctr 5531 012 Infridgement Action Against Cambridge Academy\Lawsuit\memo opposition exped disc.wpd}

9